## STEWART v. ARMSTRONG.

### (Circuit Court, S. D. Ohio, W. D. June 5, 1893.)

### No. 4,459.

1. **BANKS AND BANKING—LOANS—FRAUD OF OFFICER—ESTOPPEL.**
    The vice president of the Fidelity National Bank wrote a letter to the Chemical National Bank, signed by himself as vice president, requesting a loan upon a certain certificate of deposit, and certain bills receivable, as collateral. The Chemical Bank made the loan, crediting the Fidelity Bank with the amount, and so notified the cashier. The amount was thereupon placed to the vice president's credit by his order, and was used by him so that the bank received no benefit therefrom. The certificate of deposit was false, and the notes deposited as collateral were obtained by him for the purpose of raising money for his personal use. *Held* that, as the Chemical Bank dealt with him solely in his official capacity, the Fidelity Bank is estopped to deny that the loan was made to it, and for its benefit, and it is liable for its repayment.

2. **SAME—COLLATERALS—SUBSTITUTION.**
    Shortly after the loan was made the vice president, as such, and ostensibly on behalf of his bank, asked the return of part of the collateral, and the substitution of certain other notes for it, and this was conceded. Among the notes so substituted were some made to the order of H. & Co., and indorsed by them. H. & Co. received no consideration for the transfer of these notes, and the Fidelity Bank had nothing to do with them. The vice president of the bank was also the managing partner of H. & Co., and in this capacity he dealt with the notes. *Held* that, as against the Chemical Bank, the firm of H. & Co. was estopped to deny that these notes were properly pledged as security for the loan to the Fidelity Bank.

3. **SAME.**
    The estoppel upon the Fidelity Bank exists, however, in favor of the Chemical Bank, and no further; and hence H. & Co. have no remedy against the Fidelity Bank on account of any liability that may be enforced against them by the Chemical Bank on account of the notes so pledged, which were indorsed by them.

4. **SAME—INSOLVENCY—PROOF OF SURETY.**
    Furthermore, where the Fidelity Bank has become insolvent, and the Chemical Bank has proved its whole debt against it, H. & Co., who quoad hoc occupy the position of sureties for the Fidelity Bank, are not entitled to prove any claim against the insolvent by reason of the enforcement of their liability as sureties.

In Equity. Suit by James H. Stewart, trustee of E. L. Harper & Co., against David Armstrong, receiver of the Fidelity National Bank. Bill dismissed.

Statement by SAGE, District Judge:

On the 28th of February, 1887, Edward L. Harper, then vice president of the Fidelity National Bank of Cincinnati, mailed to the Chemical National Bank of New York a letter signed by himself, as vice president of the Fidelity National Bank, asking for a loan of $300,000, and inclosing a certificate

attesting that he had deposited that amount in the Fidelity Bank, to be returned on the surrender of the certificate, indorsed by him. He also inclosed, as collateral for the loan requested, bills receivable aggregating $326,695.30. Harper did not then have on deposit in the Fidelity Bank $300,000, or any other sum, as the basis of the certificate of deposit forwarded. A large part of the collateral sent had been obtained by him for the purpose of raising money for his personal use. The certificate of deposit did not appear on the books of the Fidelity Bank. It had been torn out from the back part of the book of blank certificates of deposit owned and used by the bank. The letter in which it was sent was not copied in the letter book of the bank.

On March 2, 1887, the Chemical Bank made the loan of $300,000 upon the certificate of deposit and the collateral note, and credited the Fidelity Bank with that amount, and on the same day, through its cashier, so notified the cashier of the Fidelity Bank. At the end of the month the loan was stated in the account current sent by the Chemical Bank to the Fidelity Bank. As soon as notice was received by the Fidelity Bank that the loan had been made, the amount was, by Harper's order, placed to his individual credit. A corresponding charge was then made on the books of the Fidelity Bank against the Chemical Bank, so as to offset the credit received from the loan. The result was that the drafts by which the money was drawn out of the Chemical Bank, and which were officially signed on behalf of the Fidelity Bank, did not appear on the books of the Fidelity Bank.

On the 19th of May, 1887, the Fidelity Bank telegraphed the Chemical Bank for the return of part of the collaterals, offering to substitute other collaterals; and, on the same day, Harper, over his signature as vice president of the Fidelity Bank, wrote to the cashier of the Chemical Bank to the same effect. On the 21st of May, Harper, over his signature as vice president, wrote to the Chemical Bank, inclosing collaterals for substitution aggregating $230,592.46, and requesting the return of 19 of the original collateral notes,—specifying them. This substituted collateral was accepted, and the collateral asked for returned to the Fidelity Bank. Of the collateral thus returned, notes aggregating $127,495.30 were the property of the Fidelity Bank. Among the substituted collaterals were 15 notes made by Whiteley, Fassler & Kelly, to the order of E. L. Harper & Co., amounting to $74,819.76, all negotiable, and bearing the indorsement of E. L. Harper & Co., and none of them then due. The firm of E. L. Harper & Co. received no consideration for the transfer or indorsement of those notes, and did not pay them at maturity. They were protested by the Chemical Bank for nonpayment. E. L. Harper & Co. and the Fidelity Bank went into insolvency in June, 1887. The complainant is their trustee. After protesting the notes for nonpayment the Chemical Bank presented its claim upon them to the complainant for the sum of $74,819.76, with interest, and also presented its claim against the defendant, the receiver of the Fidelity Bank, for the amount of said loan of $300,000, and the same, less the amount which had then been paid on it, was allowed. The loan not having been paid by the defendant, the complainant allowed the claim made against him by the Chemical Bank, as presented, and in March, 1891, under the order of the probate court of Hamilton county, Ohio, paid thereon, to the Chemical Bank, a dividend of 4 per cent., amounting to $2,917.12.

On the 15th of February, 1891, the complainant presented, in due form, the claim against the defendant, based upon said Whiteley, Fassler & Kelly notes, and for the amount thereof, with interest, as a liability of the Fidelity Bank to E. L. Harper & Co. The receiver, on the 21st of April, 1891, wholly rejected said claim. On the 13th of April, 1888, the defendant presented to the complainant a claim against E. L. Harper & Co., wholly distinct and apart from the matters hereinbefore mentioned, amounting to $173,219.32, and the same was allowed by the complainant as a valid claim against the estate of said firm, but no dividend has been paid upon it. E. L. Harper & Co. was a general partnership composed of E. L. Harper, George Clymer, and William H. Harper. This suit was brought to compel the defendant to allow the claim of the complainant upon the Whiteley, Fassler & Kelly note for $74,819.76, with interest.

Edward W. Strong, for complainant.
John W. Herron, for respondent.

SAGE, District Judge, (after stating the facts as above.) The claim on behalf of complainant is that the $300,000 loan was from the Chemical Bank to the Fidelity Bank. The facts of the case are not in dispute. The transactions were between the proper officials of the two banks. As is claimed by counsel for the complainant, the Chemical Bank placed the amount of the loan to the credit of the Fidelity Bank, and so notified that bank. The money was drawn out of the account of the Fidelity Bank upon drafts duly signed by it. The Chemical Bank dealt with Harper as an officer of the Fidelity Bank, and in no other capacity. As between the Chemical Bank and the Fidelity Bank, the transaction was, both in form and effect, a loan to the Fidelity Bank, and in no sense a loan to Harper, individually. In fact, however, the loan was not a transaction of the Fidelity Bank. It was one of a long series of fraudulent and criminal appropriations to his own use, by E. L. Harper, of the credit and money of the Fidelity Bank, which began on the first day that the bank was opened for business, and continued until its insolvency. But, as between the Fidelity Bank and the Chemical Bank, the Fidelity Bank was estopped, by reason of Harper being its vice president and general manager, from proving the fact as it existed, and from denying that the loan was made on its account. Harper was at the same time the leading and managing partner of the firm of E. L. Harper & Co., and by virtue of that relation came into possession and control of the 15 notes made for the accommodation of that firm by Whiteley, Fassler & Kelly. He used those notes in aid of the fraud which he was perpetrating against the Fidelity Bank, and E. L. Harper & Co. were estopped from denying to the Chemical Bank that those notes were properly pledged as security for the $300,000 loan. The legal maxim that, where one of two innocent persons must suffer by the wrong of a third, the one who made it possible for the third to effect the wrong must bear the loss, is in point. The fallacy of the claim for the complainant consists in overlooking, or failing to observe, that the estoppel which applies against the Fidelity Bank, in favor of the Chemical, is limited to themselves, and does not apply in favor of E. L. Harper & Co. It is settled that, in the relation of guarantor and principal, no privity arises, (Pritchard v. Hitchcock, 6 Man. & G. 151,) and the same is true of the relation of surety and principal, (Bigelow, Estop. 75.) An authority directly in point is Burnand v. Rodocanachi, L. R. 7 App. Cas. 333. In that case the respondents were insured, by valid policies, on a cargo which was destroyed by the Confederate cruiser Alabama. The underwriters paid the respondents, as on an actual total loss, the valued amounts, which were less than the real value. The United States, out of a compensation fund created after the loss, and distributed under an act of congress, paid to the respondents the difference between the sum received by them from the underwriters, and

their real total loss.    Under the act no claim was allowed for any loss for which compensation had been made by an insurer, but, if such compensation was not equal to the loss actually suffered, allowance might be made for the difference.    The complainant sued, on behalf of himself and all other underwriters interested, upon the policies issued to the respondents.    The claim was that the insurers, having paid the total as agreed between them and the respondents, were subrogated to all their rights.    The court below sustained the claim, but the decision was reversed on appeal. Lord Chancellor Selborne pointed out that the fallacy of the reasoning of the learned judges below was that they took the valuation of the policies as conclusive, and as operating by way of estoppel beyond the purposes of the contract of insurance, whereas, for purposes collateral to that contract, the insured could show that their loss was in fact greater than that which was covered by the policy.    To apply that case to this:    The Fidelity Bank was not permitted to show that the $300,000 loan was not in fact made by it, but, fraudulently, by its vice president, in furtherance of his own criminal purposes, because it had enabled that vice president to mislead the Chemical Bank into making the loan under the belief that it was conducting a genuine transaction with the Fidelity Bank.    But Harper's position as vice president of the Fidelity Bank gave him no authority or control over the Whiteley, Fassler & Kelly notes.    As to the disposition of those notes, E. L. Harper & Co. had placed him in a position which enabled him to make fraudulent use of them, but gave them no recourse against either the Chemical Bank or the Fidelity Bank.    The Fidelity Bank had in fact nothing whatever to do with the fraudulent use of those notes, and it bears no such relation to E. L. Harper & Co. as to be under any estoppel to establish the facts as they exist. To the extent that the Fidelity Bank made it possible for Harper to effect the fraudulent loan from the Chemical Bank, the Fidelity Bank must respond to the Chemical Bank.    To the extent that E. L. Harper & Co. made it possible for Harper to use the Whiteley, Fassler & Kelly notes in effecting the fraudulent loan from the Chemical Bank, E. L. Harper & Co. must be held responsible to the Chemical Bank.    But to the extent that the Fidelity Bank has been injured by the fraud of Harper in the transaction, and that E. L. Harper & Co. have been injured, they must, severally, look to him alone. There was no privity in this transaction between the Fidelity Bank and E. L. Harper & Co.    There was privity between each of them and the Chemical Bank, and therefore, by estoppel, they are held liable to that bank.    The Whiteley, Fassler & Kelly notes were never in the possession of the Fidelity Bank, nor indorsed to that bank, nor by it to the Chemical Bank.    They were in the possession of E. L. Harper, and by him indorsed, and sent to the Chemical Bank.    Whether E. L. Harper & Co. were chargeable with notice of Harper's fraud in this matter is wholly immaterial.    They are chargeable with the responsibility and liability resulting from having invested him with the authority which enabled him to do what he did do with those notes.

There is another conclusive objection to the complainant's claim to a decree in this cause. There is here a single debt against the Fidelity Bank, of $300,000. It has been proven against the Fidelity Bank by the Chemical Bank, and the claim of the Chemical Bank has been sustained by this court, without any reductions on account of the payments made by the complainant, or of the notes held as collateral. It is well settled that a surety for a bankrupt cannot prove an additional claim, if the creditor has a right to prove the entire amount of that claim. Judge Lowell, in Re Souther, 2 Low. 322, says:

"The payment made by the indorser after the maker of the note was a bankrupt cannot be proved by the surety as money paid under section 16, because it had not been paid at the time of the bankruptcy. It must either be proved as part of the note in the hands of the holder, and for the benefit of the indorser, or it is not provable at all."

Judge Lowell finds the law as stated, not as a construction of a statutory provision of the bankrupt act, "but merely that the section recognizes a familiar equity, and takes for granted that a creditor may prove the debt notwithstanding payment in whole or in part by a surety, because he in fact proves as the trustee of the surety." So, in Re Ellerhorst & Co., 5 N. B. R. 144, after citing section 5070 of the Revised Statutes of the United States, it is said:

"The two clauses together secure the attainment of justice in all cases. By the first the surety who has discharged the debt is subrogated in the right of the creditor whom he has paid. By the second the creditor may prove the whole debt. The surety cannot in such case prove, for that would be proving the same debt twice. But, if the surety has paid part, the creditor, after receiving in dividends satisfaction of the balance due him, will hold, as trustee for the surety, any dividends received by him in excess."

A surety—and this is the only relation which is claimed by counsel for Harper & Co. in the present case—may pay the debt, and then prove it, or he may compel the creditor to prove it. But he cannot, without paying the debt, make a second proof after the same debt has once been proved by the creditor.

The bill also seeks to have the claim upon the Whiteley, Fassler & Kelly notes allowed in favor of the complainant as an offset to the claim of the Fidelity Bank against E. L. Harper & Co. It is scarcely necessary to add to what has already been said that a claim that cannot be proved cannot be allowed as an offset.

The bill will be dismissed at the costs of the complainant.